**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| NICOLE MUSCENTE, *et al.*, <br>     *Plaintiffs*, <br><br> v. <br><br> JOLLY ROGER RIDES, INC., *et al.*, <br>     *Defendants* | Case No. 24-cv-02304-ABA |

**MEMORANDUM OPINION**

On August 17, 2021, Plaintiff Nicole Muscente suffered personal injuries while using the "Master Blaster" water slide at Splash Mountain Water Park ("Splash Mountain") in Ocean City, Maryland. Ms. Muscente, along with her husband, Francis Muscente, have filed this action against Defendants Jolly Roger Rides ("Jolly Roger") and Bay Shore Development Corporation ("Bay Shore"), asserting eight causes of action. Defendants moved to dismiss Counts 2 through 7, and Plaintiffs have withdrawn Counts 2 and 6. For the reasons that follow, the motion to dismiss will be granted as to Plaintiffs' gross negligence and strict liability claims (Counts 3 and 4) and denied as to Plaintiffs' breach of warranty claims (Counts 5 and 7).

**I.   FACTUAL BACKGROUND**

For purposes of this motion to dismiss, this Court accepts the facts alleged in the Complaint as true and draws all reasonable inferences in Plaintiffs' favor. *See*, *e.g.*, *Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

On or about August 17, 2021, Ms. Muscente visited Splash Mountain Water Park, which is operated by Defendants, with members of her family. ECF No. 3 ¶ 9. They purchased tickets to enter the park, which provided access to several rides, including the

Master Blaster water slide. *Id.* ¶ 34. While at the park, Ms. Muscente proceeded to ride the Master Blaster with her goddaughter. *Id.* ¶ 11. Defendants require that any person using the Master Blaster ride down on an inflatable tube. *Id.* As Ms. Muscente and her goddaughter approached the slide, one of the Defendants' agents provided them with a two-person tube. *Id.* ¶¶ 11, 20. As Ms. Muscente neared the front of the line, another water park employee replaced the tube for a group of patrons ahead of them. *Id.* ¶ 13. That prompted her to ask the employee "whether her tube was safe to use or if it needed to be replaced like the group ahead of her." *Id.* ¶ 14. The employee replied that her tube was safe to use and did not need to be replaced. *Id.* ¶ 15.

Ms. Muscente alleges that as she proceeded down the slide with her goddaughter, she noticed that the tube felt underinflated. *Id.* ¶ 16. As she exited the water slide and entered the pool at the end of the ride, the tube "jolted downwards," which "caused Ms. Muscente's left foot to crash violently into the bottom of the pool," causing serious injuries to her left leg. *Id.* ¶¶ 17–18, 30. She alleges that her injuries were the result of underinflation of the tube and the allegedly "unreasonably shallow" pool depth of two feet at the termination of the slide. *Id.* ¶¶ 18, 22, 25.

On August 8, 2024, Ms. Muscente, along with her husband, Francis Muscente, filed this diversity action in this Court pursuant to 28 U.S.C. § 1332. ECF No. 1. On September 25, 2024, Plaintiffs filed their First Amended Complaint (the "Complaint"), adding a cause of action for gross negligence. ECF No. 3. The Complaint alleges eight counts: (1) negligence; (2) negligence per se; (3) gross negligence; (4) strict liability; (5) breach of express warranty; (6) breach of implied warranty of merchantability; (7) breach of implied warranty of fitness for a particular purpose; and (8) loss of consortium on behalf of Mr. Muscente. Pursuant to Federal Rule of Civil Procedure

12(b)(6), Defendants have moved to dismiss all counts other than Count 1 (negligence) and Count 8 (loss of consortium). In their Response Brief, Plaintiffs withdrew Count 2 (negligence per se) and Count 6 (breach of implied warranty of merchantability). *See* ECF No. 14 at 3, 13. Thus, with Defendants not seeking dismissal of Counts 1 and 8, and Counts 2 and 6 having been withdrawn, the remaining counts that Defendants request that the Court dismiss are Counts 3 (gross negligence), 4 (strict liability), 5 (breach of express warranty), and 7 (breach of implied warranty of fitness).

## II.  STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. *Id.* 12(b)(6). At the pleadings stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative relief" by containing "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And while a court reviewing a 12(b)(6) motion "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff," *King*, 825 F.3d at 212, bare legal conclusions "are not entitled to the

3

assumption of truth" and are insufficient to state a plausible claim. *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

### A. Count 3: Gross Negligence

Under Maryland law, which the parties agree applies to Plaintiffs' claims, "[g]ross negligence is an intentional failure to perform a manifest duty in reckless disregard for the consequences as affecting the life or property of another." *Barbre v. Pope*, 402 Md. 157, 187 (2007). Gross negligence applies "only when [the defendant] inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Stracke v. Est. of Butler*, 465 Md. 407, 421 (2019) (quoting *Barbre*, 402 Md. at 187). While questions about whether a defendant has acted with gross negligence are ordinarily questions of fact, *see Artis v. Cyphers*, 100 Md. App. 633, 652 (1994), to state a gross negligence claim sufficient to survive a motion to dismiss a plaintiff must have pled facts that, if true, would constitute "a wanton or reckless disregard for human life." *State v. Kramer*, 318 Md. 576, 590 (1990). "Only conduct that is of extraordinary or outrageous character will be sufficient to imply this state of mind." *Id.*

Plaintiffs' core allegation in support of their gross negligence claim is that, in operating the Master Blaster ride on the day Ms. Muscente used it, "one or more of the Defendants were aware of the dangerous propensities of its underinflated tubes, its water slides, and/or the inadequate pool depth and yet acted with reckless disregard for the consequences to its customers and therefore one or more of the Defendants were grossly negligent." ECF No. 3 ¶ 52. Defendants argue that the Complaint does not allege facts that, even if true, would satisfy this legal standard sufficient to "nudge[ ] their

[gross negligence claim] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The Court agrees. The facts alleged in the Complaint, which the Court accepts as true, do not rise to the level sufficient to sustain a gross negligence claim.

As for Defendants' alleged gross negligence in furnishing "underinflated tubes," Plaintiffs rely in particular on the fact that "Defendants' agent . . . replaced [a] tube for a guest ahead of Ms. Muscente" and informed her that her "tube was safe and then permitted [her] . . . to proceed down the slide." *Id.* ¶¶ 13, 15. But that allegation, even with all reasonable inferences drawn in Plaintiffs' favor, does not reflect that Defendants' employees acted with "wanton or reckless disregard for human life," which is an element of a gross negligence claim, as discussed above. *Kramer*, 318 Md. at 390.

That leaves Plaintiffs' theory that Defendants were grossly negligent because Maryland Code of Regulations 09.12.63.07(E)(1) requires that, "[u]nless the manufacturer specifies otherwise, a splash pool depth of at least 3 feet shall be provided at the end of each flume for a distance of at least 20 feet," but the pool at the bottom of the Master Blaster is only two feet deep, ECF No. 5 ¶ 22. To the extent the Master Blaster slide was shallower than required by regulation, that may be relevant to Plaintiffs' negligence claim, as Defendants concede. ECF No. 9-1 at 4. But the allegations regarding the depth of the pool do not rise to the level of "wanton or reckless disregard for human life" that is required to state a claim for gross negligence. *Kramer*, 318 Md. at 590. *See also Strum v. Exxon Co., U.S.A.*, 15 F.3d 327, 332 (4th Cir. 1994) ("[V]iolation of a regulation, without more, [is] insufficient to make out a claim for gross negligence."); Restatement (Second) of Torts, § 500, cmt. e ("[T]he statute must not only be intentionally violated, but the precautions required must be such that their omission will be recognized as involving a high degree of probability that serious harm

5

will result."); *Stracke*, 465 Md. at 425 ("[T]he failure to adhere to protocols and policies does not itself establish a reckless disregard for human life or amount to gross negligence.").

For these reasons, Count 2 will be dismissed.

### B. Count 4: Strict Liability

In Count 4, Plaintiffs allege that Defendants are strictly liable for Ms. Muscente's injuries because "one or more of the Defendants were a lessor and/or bailor of the two-person inflatable tube [they] provided to Ms. Muscente on August 17, 2021." ECF No. 3 ¶ 55. This is a product liability theory; Plaintiffs' claim is that Defendants provided the tube to Ms. Muscente and that the tube was defective in ways that caused her injuries.

Defendants argue this count should be dismissed for two reasons. First, they argue that strict liability only applies to *sellers* of defective *products* and that they did not sell any product to Ms. Muscente but rather sold a service, namely the opportunity to use the tube and water slide. *See* ECF No. 9-1 at 5–6. Second, Defendants argue that even if strict products liability extends to lessors of products, they did not enter into a lease with Ms. Muscente by providing the inflatable tubes to customers who use the Master Blaster ride. *See* ECF No. 15 at 2.

To recover on a claim of strict products liability under Maryland law, a "claimant must allege and prove that: (1) the product was in a defective condition at the time it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause of the injuries, and (4) that the product was expected to and did reach the consumer without substantial change in its condition." *Collins v. Li*, 176 Md. App. 502, 572–73 (2007) (quoting *Phipps v. Gen. Motors Corp.*, 278 Md. 337, 344 (1976)).

But that is the standard for transactions involving the sale (or lease) of a "product." A party "cannot be held strictly liable in court if the predominant purpose of th[e] transaction was a service rather than a sale." *ACandS, Inc. v. Abate*, 121 Md. App. 590, 704 (1998), *abrogated on other grounds by John Crane, Inc. v. Scribner*, 369 Md. 369 (2002). In applying the "predominant purpose" test to a strict liability claim, the *ACandS* court noted that the Maryland courts had previously applied the test to products liability actions in the medical context, as required by statute and common law. *Id.* at 703–05 (citing *Roberts v. Suburban Hosp. Ass'n, Inc.*, 73 Md. App. 1, 8 (1987) ("Neither the implied warranties nor the notion of strict liability has been applied in Maryland to a transaction that is predominantly one of providing services.") and *Miles Lab'ys, Inc. v. Doe*, 315 Md. 704, 724–25 (1989) (noting that strict liability could apply because the distribution of blood clotting factor concentrate "constituted a sale, rather than a service.")). The court in *ACandS* found persuasive that other jurisdictions that have "refus[ed] to apply the doctrine of strict liability where the service was the predominant factor" in the transaction. *Id.* at 706–07 (citing W. Page Keeton *et al.*, *Prosser and Keeton on Torts* § 104, at 720 (5th ed. 1984)). Thus, the *ACandS* court concluded that "a party to a hybrid transaction cannot be held strictly liable in tort if the predominant purpose of that transaction was a service rather than a sale." *Id.* at 708.

The "predominant purpose" test was first adopted in *Burton v. Artery Co.*, 279 Md. 94, 108–09 (1977), to determine whether a transaction was sufficiently predominated by "goods" to be subject to the Uniform Commercial Code. Since then, as illustrated in *ACandS*, the Maryland courts have applied the same test to determine whether strict liability applies to hybrid service-goods transactions. *See Miles Lab'ys*, 315 Md. at 724–25; *Roberts*, 73 Md. App. at 8; *Wallace & Gale Asbestos Settlement Tr.*

7

*v. Carter*, 211 Md. App. 488, 505 (2013) (upholding the trial court's jury instruction that "strict liability does not apply where the predominant purpose of the defendant's conduct was the provision of a service rather than the sale of the good"), *rev'd on other grounds*, 439 Md. 333 (2014).

To determine whether the predominant purpose of a transaction is one for the sale of goods or services, courts identify what constitutes the pertinent "transaction" and then look to the nature of the parties' agreement and the circumstances surrounding the transaction. *See DeGroft v. Lancaster Silo Co.*, 72 Md. App. 154, 168 (1987) (collecting cases). The question is "whether the [agreement's] predominant factor, [its] thrust, [its] purpose is the rendition of service, with goods incidentally involved . . . or is a transaction of sale, with labor incidentally involved." *Burton*, 279 Md. at 108–09.

Thus, the question for the Court is: accepting the Complaint's factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, does the Complaint support a finding that Plaintiffs entered into a transaction that was predominantly a sale of goods, rather than services?

The answer is no. Plaintiffs allege that they entered into a transaction "to allow them to access the Splash Mountain Water Park and ride the rides using their tubes and other equipment." ECF No. 3 ¶ 34. There are no allegations supporting a reasonable inference that the provision of the inflatable tube for the Master Blaster ride, or other accessories that may have been necessary to partake in other amusements at the park, was a "predominant factor" of the parties' agreement to enter the amusement park or to use the Master Blaster ride specifically. Although Ms. Muscente alleges that "Defendants require the use of a two-person inflatable tube for the Master Blaster slide," *Id.* ¶ 11, this does not render the handing over of the tube the "predominant purpose" for the

8

"transaction," whether the "transaction" is the use of the water park overall or the use of the Master Blaster ride specifically. After all, as Defendants put it, "the tubes are for patrons to use on the Master Blaster—they are not given to patrons at the entrance of the park for use on multiple rides." ECF No. 15 at 3. And even if the Court were to construe the "transaction" as being Ms. Muscente's use of the Master Blaster ride specifically, the allegations in the Complaint do not support a reasonable inference that the provision of the tube predominated over the use of the water slide. *See Roberts*, 73 Md. App. at 15 (noting that it would be "inaccurate to conclude as a matter of law that the product [blood] predominates over the service [a blood transfusion].").

This conclusion is further bolstered by courts in other jurisdictions that have wrestled with the issue of whether to apply strict liability to hybrid sales-service transactions in amusement parks. These courts have long held that amusement park operators, like Defendants, predominantly provide services. *See*, *e.g.*, *Siciliano v. Capitol City Shows, Inc.*, 475 A.2d 19, 25 (N.H. 1984) ("The defendant . . . does not sell or supply a product. It provides persons with a service; namely, a ride on a machine."); *see also* Restatement (Third) of Torts: Prods. Liab. § 20, Reporters' Note f ("Amusement ride operators, however, are considered to provide a service, not a product, and thus are not held strictly liable."). Thus, courts generally only impose strict liability upon a defendant amusement park in the rare instance "when the *transaction* possesses the attributes of a sale." *Greenwood v. Busch Ent. Corp.*, 101 F. Supp. 2d 292, 295 (E.D. Pa. 2000) (quoting *Sells v. Six Flags Over Tex., Inc.*, Case No. 96-CV-1574-D, 1997 WL 527320, at *2 (N.D. Tex. Aug. 14, 1997)) (emphasis added).

For example, in *Golt v. Sports Complex, Inc.*, 644 A.2d 989 (Del. Super. Ct. 1994), the court upheld a strict liability claim against a defendant amusement park

9

because the thrust of the transaction was oriented around the provision of a product. *Id.* at 993. The plaintiff, who did not pay an admission fee to gain entry to the amusement park, purchased an individual ticket to ride a go-cart attraction. *Id.* at 990. The plaintiff alleged that she suffered injuries from a defective go-cart. *Id.* The court first noted that strict liability could not be imposed on the provider of a service, even if a product were incidentally involved. *Id.* at 993 (citing *Siciliano*, 475 A.2d at 25). However, because the plaintiff purchased a ticket for a single ride centered on the provision of a go-cart, "the essence of the transaction" was not the provision of a service, but rather "the transfer of possession and control of the go cart." *Id.* Thus, strict liability could apply. *Id.*

But in addition to being distinguishable from this case, *Golt* is a relative outlier among courts that have been tasked with the issue of whether to apply strict liability upon defendant amusement parks because "the essence of the transaction" at an amusement park is most commonly a service. *See, e.g.*, *Sells*, 1997 WL 52730, at *3 ("Six Flags is in the business of providing amusement park entertainment to its patrons. It does not sell the rides themselves."). *See Eves v. S.P. Parks, Inc.*, Case No. 87-cv-7776, 1988 WL 109107, at *1 (E.D. Pa. Oct. 17, 1988) (dismissing strict liability count when plaintiff was injured while riding a nearly identical water slide attraction after paying an admission fee to enter the park). Here, even accepting Plaintiffs' allegations as true, the "essence of the transaction" was a service—the entertainment associated with having the ability to enter the park and participate in various rides, including the Master Blaster.

In short, Plaintiffs' strict liability claim (Count 4) does not state a claim on which relief can be granted because Plaintiffs have not alleged that the predominant purpose of the transaction(s) at issue involved the sale (or lease, or bailment) of goods. Accordingly, the Court need not reach the question of whether strict liability under

10

Maryland law extends to leases or bailments. *See Casasola v. Jolly Roger Rides, Inc.*, No. 23-cv-02800, 2024 WL 51130, at *3–4 (D. Md. Jan. 4, 2024) (collecting cases on that issue). Accordingly, Count 4 of the First Amended Complaint will also be dismissed.

### C. Breach of Warranty Counts (Counts 5 and 7)

Ms. Muscente also asserts two breach-of-warranty claims: Count 5 for breach of express warranty, *see* Md. Code Ann., Com. L. §§ 2A-210, 2-313; and Count 7 for breach of implied warranty of fitness for a particular purpose. *See id.* §§ 2A-213, 2-315. As for the express warranty count, Ms. Muscente alleges that she "reasonably relied" on the employee's alleged statement that the inflatable tube "was appropriate and safe" to use after entering into a lease or bailment for the tube. *See* ECF No. 3 ¶¶ 59–61. Similarly, for the implied warranty count, Ms. Muscente alleges that "Defendants had reason to know that Ms. Muscente" relied on Defendants' judgment to furnish a "tube used to ride the Master Blaster slide and [a] pool" that were "fit for the particular purpose for which such products are expected to be used." *Id.* ¶¶ 71–72.

Warranty claims under the Uniform Commercial Code arise only from "transactions in goods." *DeGroft*, 72 Md. App. at 164 (citing *Burton*, 279 Md. at 113). Goods are "all things . . . which are movable at the time of identification to the contract for sale." Md. Code Ann., Com. L. § 2-105(1). Thus, as a preliminary matter, because the water slide, and the pool at the bottom of it, were not "movable at the time of identification to the contract for sale," they cannot form the basis for warranty liability. *See Morris v. Osmose Wood Pres.*, 340 Md. 519, 545 (1995) (noting that a house is not a good because it is not movable); *see also Dantzler v. S.P. Parks, Inc.*, Case No. 87-cv-4434, 1988 WL 131428, at *5 (E.D. Pa. Dec. 6, 1988) (holding that a "Runaway Rapids" amusement ride was real property and could not be the basis for warranty liability).

11

The tube itself was movable, but can it give rise to warranty liability? In Defendants' motion to dismiss, they assert a single argument for dismissal of these counts: that express and implied warranty claims "require[] a sale or transfer of title." ECF No. 9-1 at 7–9 (citing *Doe v. Miles Lab'ys, Inc.*, 677 F. Supp. 1466 (D. Md. 1987), *aff'd*, 927 F.2d 187 (4th Cir. 1991), *and abrogated on other grounds*, *Klein v. Sears, Roebuck and Co.*, 92 Md. App. 477 (1992), and *Bona v. Graefe*, 264 Md. 69 (1972)). But as Ms. Muscente correctly points out, ECF No. 14 at 8, the caselaw relied upon by Defendants has been superseded by amendments to the Commercial Law Article, which now provides that "[e]xpress warranties" can be created when a "lessor," for example, makes an "affirmation of fact or promise" that "relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise." Md. Code Ann., Com. L. § 2A-201. Similarly, regarding the implied warranty of fitness, section 2A-213 provides that if a "lessor" has "reason to know" that there is a "particular purpose for which the good are required and that the lessee is relying on the lessor's skill or judgment to select or furnish suitable goods, there is in the lease contract an implied warranty that the goods will be fit for that purpose." Md. Code Ann., Com. L. § 2A-213. The same standard applies to bailments for hire. *See id.* § 2-313 cmt. 2 ("[T]he warranty provisions of this Article . . . may arise in other appropriate circumstances such as in the case of bailments for hire . . . ."); *id.* § 2-315(2) ("The [implied warranty of fitness] provisions of subsection (1) apply to a lease of goods and a bailment for hire of goods . . . .").

Because that is the sole argument asserted for dismissal of Counts 5 and 7 in Defendants' opening brief, the Court need not decide whether the complaint adequately alleges other elements of these breach-of-warranty claims, such as whether an actual

lease or bailment was created. Defendants do argue in their reply brief that even though the Commercial Law Article extends warranty liability to lessors, they "cannot be considered a lessor." *See* ECF No. 15 at 5. But this Court generally "do[es] not consider arguments raised for the first time in a reply brief." *SEC v. Pirate Investor, LLC*, 580 F.3d 233, 255 n.23 (4th Cir. 2009) (citing *A Helping Hand LLC v. Balt. Cnty.*, 515 F.3d 356, 369 (4th Cir. 2008)). As Judge Coulson noted to these same Defendants just last year, "[s]hould Defendant have wished to contest the sufficiency of Plaintiff's allegation that Defendant was a lessor and/or bailor of the inflatable tube, Defendant should have done so initially in its Motion." *Casasola*, 2024 WL 51130, at *6.

Thus, the Court does not decide one way or the other whether the provision of the tube constituted a lease. That issue can be addressed, if at all, once the parties have developed the record through discovery. In the meantime, Defendants' Motion to Dismiss Counts 5 and 7 will be denied.

### IV.   CONCLUSION

For the reasons discussed above, Ms. Muscente's complaint does not state claims on which relief can be granted under a gross negligence or strict liability theory of liability. The Court will dismiss these counts. That dismissal will be without prejudice, in the event Plaintiffs believe there are additional facts that would cure the deficiencies in those counts identified herein. The motion to dismiss as to the breach-of-warranty claims will be denied. A separate order follows.

Date:   August 7, 2025                             _____/s/_____
                                                   Adam B. Abelson
                                                   United States District Judge